Michael M. Ahmadshahi, Esq. (Bar No. 219933)
Email: mahmadshahi@mmaiplaw.com
AHMADSHAHI LAW OFFICES
17901 Von Karman Avenue, Suite 600
Irvine, CA 92614
Telephone: 949.556.8800
Facsimile: 949.556.8701
Attorney for Plaintiffs
Oumere LLC and Wendy Ouriel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| OUMERE LLC, a Delaware Limited Liability Company and WENDY OURIEL, an Individual Plaintiffs, <br><br> v. <br><br> CALLI ZARPAS, an Individual Defendant. | Case No.: 8:21-cv-00224 DOC(JDEx) <br><br> **PLAINTIFFS' JOINT BRIEF IN OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION** |

# TABLE OF CONTENTS

<u>Page</u>

I.      INTRODUCTION ……………………………..…………………………1

II.     STATEMENT OF FACTS ……………………………………………4

III.    LEGAL STANDARDS …………………………….……12

IV.    ARGUMENTS …………………………………………………...12

       A. Defendant's Statements Were Not Made In

          Connection With An Issue Of Public Interest ……………………..12

       B. Plaintiff Can Show a Reasonable Probability of Success …………15

          1.  Defamation and Trade Libel Causes of Action ……………15

             i.     Defendant Acted With Malice …………………………15

             ii.    The Statements Are False ……………………………..16

             iii.   The Statements Are Not Mere Expressions

                  of Opinion ……………………………………………...16

             iv.   Plaintiff Can Show Special Damages …………………21

          2.  Interference With Economic Relations

            Causes of Action …………………………………………23

             i.     An Existing Client and a Potential Client Read

                  the Review and Terminated Their Economic

                  Relations With Plaintiffs …………………………….23

             ii.    Defendant Knew About Plaintiffs' Economic

                  Relations With Their Existing and Potential

                  Clients and Intentionally and/or Negligently

                  Disrupted Them ………………………………………24

V.      CONCLUSION ……......…………………………………………...25

# TABLE OF AUTHORITIES

## CASES

<u>Page</u>

*Atlantic Mutual Insurance v. J. Lamb*

100 Cal.App.4th 1017 (Cal. Ct. App. 2002) …………………………………………..22

*Blank v. Kirwan*

39 Cal.3d 311 (Cal. 1985) ………………………………………………………………24

*Collier v. Harris*

192 Cal. Rptr. 3d 31 (Cal. Ct. App. 2015) ……………………………………………13

*Davis v. Hearst*

160 Cal. 143 (Cal. 1911) ………………………………………………………...17

*D.C. v. R.R.*

182 Cal.App.4th 1190 (2010) ……………………………………………………………13

*Doe v. Luster*

145 Cal.App.4th 139 (Cal. Ct. App. 2006) …………………………………………11

*Dryden v. Tri-Valley Growers*

65 Cal.App.3d 990 (Cal. Ct. App. 1977) ……………………………………………...23

*Dyer v. Childress*

147 Cal.App.4th 1273 (Cal. Ct. App. 2007) …………………………………13, 14

*Equilon Enterprises v. Consumer Cause, Inc.*

29 Cal.4th 53 (2002) …………………………………………………………..12, 15, 24

*Erlich v. Etner*

224 Cal.App.2d 69 (Cal. Ct. App. 1964) …………………….....………19, 21, 22

*Fifield Manor v. Finston*

54 Cal.2d 632 (Cal. 1960) ………………………………………………………………23

*GetFugu, Inc. v. Patton Boggs LLP*

220 Cal.App.4th 141 (2013) ……………………………………………………..17

*Herbert v. Lando*

441 U.S. 153 (1979) ………………………………………………………………2

*Integrated v. Fitzgibbons*

140 Cal.App.4th 515 (Cal. Ct. App. 2006) ………………………………24

*Kashian v. Harriman*

98 Cal.App.4th 892 (Cal. Ct. App. 2002) ………………………………..15

*Korea Supply Company v. Lockheed Martin Corp.*

29 Cal.4th 1134 (Cal. 2003) ………………………………………24, 25

*McGarry v. University of San Diego*

154 Cal.App.4th 97 (2007) ………………………………………………21

*Rivero v. American Federation of State, County and*

*Municipal Employees, AFL-CIO*

105 Cal.App.4th 913 (2003) ……………………………………………14

*Smith v. Maldonado*

72 Cal.App.4th 637(Cal. Ct. App. 1999) ………………………………...17

*Soukup v. Law Offices of Herbert Hafif*

*(2006)* 39 Cal.4th 260 …………………………………………………12

*Summit Bank v. Rogers*

206 Cal. App. 4th 669 (2012) …………………………………………...3

*Vegod Corp. v. American Broadcasting Companies, Inc.*

25 Cal.App.3rd 763 (1979) …………………………………………...3

*Weinberg v. Feisel*

110 Cal.App.4th 1122 (2003) …………………………………………14

*Wilcox v. Superior Court*

27 Cal.App.4th 809 (1994) ……………………………………………24

*Wright v. Coules*

4 Cal.App. 343 (Cal. Ct. App. 1906) …………………………………22

*Wong v. Tai Jing*

189 Cal.App.4th 1354 (Cal. Ct. App. 2010) …………………………………..Passim

*Yelp Inc. v. Superior Court of Orange Cnty.*

17 Cal.App.5th 1 (Cal. Ct. App. 2017) ……………………………………..Passim

# STATUTES AND OTHER AUTHORITIES

<u>Page</u>

Cal. Civ. Code § 45 …………………………………………………...21

Cal. Code of Civ. Proc. § 47 …..…………………………….............. 15, 16

Cal. Code of Civ. Proc. § 425.16 ..…………………………………......3, 12, 13

## I.   **INTRODUCTION**

Plaintiffs Oumere LLC ("Oumere") and Wendy Ouriel ("Ouriel") (collectively, "Plaintiffs") submit this Joint Brief in Opposition (the "Opposition") to the Anti-SLAPP Motion (the "Motion") filed by Defendant Calliope "Calli" Zarpas ("Defendant" or "Zarpas"). Contrary to Defendant's assertion of being the victim of a Strategic Lawsuit Against Public Participation ("SLAPP"), Ms. Zarpas' online statements and inferences were made intentionally or recklessly as to their falsity and with an apparent intent to injure Plaintiffs. Defendant was disappointed for failing to gain Plaintiffs' business and became irate when she did not get an apology from Ms. Ouriel, the owner and CEO of Oumere. She blamed Plaintiffs for her chronic skin condition. She then decided to accuse Ms. Ouriel of being a fraud, her company Oumere of being a scam, and their products of causing her pimples knowing full well she has chronic issues with acne.

Defendant's attempts to play the underdog in this dispute is unavailing. She claims to be a 25 year old 2018 Suma Cum Laude graduate of Virginia Tech University who has been the target of a "powerful business[] in order [to be] silence[d] and harass[ed]." (The Motion, Page 1, Lns. 12-18, Page 2, Lns. 7-11.) Nothing could be farther from the truth! Oumere is a small up-and-coming startup company. At its core, it is built on its owner's proven expertise in cellular biology. Ms. Ouriel's expertise has been implemented on developing Oumere's state-of-the-art skin care products. It was Defendant who acted with malice and targeted Plaintiffs in order to destroy Ms. Ouriel's credentials and credibility as a fraud and her company as a scam.

Ms. Ouriel, who just turned 33 years of age, is the owner of Oumere. She started the company in the fall of 2016. At that time, she was a graduate student earning her Masters in cellular biology. She had spent the previous 3 years earning her Masters of Biology and 5 years before that earning her Bachelor of Science with

a concentration in cellular biology. Her Masters' degree did not come easy. She took the difficult path of taking an unknown science and discovering how it works. Her Masters focused on determining the biological mechanism behind the reproductive biology of black widow spiders. She spent long hours on experiments, missed holidays with family, and would sometimes sleep at the university lab just to run late night and early morning experiments. (Ouriel Decl. ¶¶ 3-5).

Following a failed solicitation from Oumere, Ms. Zarpas decided to retaliate. She went on a rant and published reputation damaging, false, defamatory, fraudulent, misleading and otherwise unlawful statements (the "Review") about Ms. Ouriel, her company Oumere and its products on Reddit[1]. She published the Review out of spite and nothing else, as will be demonstrated below. In the Review, she stated: "I followed the skincare routine's exact protocol and when I reached out with my issues, she simply said to stop using the products *with no apology*." (Complaint, Page 6, Lns. 24-25.) (Emphasis added.) Juxtaposing her disappointment regarding the failed solicitation, together with her expectation of getting *an apology from the owner and CEO of Oumere*, it is clear that her Review was a malicious and calculated act solely to injure Plaintiffs. And contrary to her assertion, the Review is not "part of an existing public controversy." ("Criticism of commercial conduct does not deserve the special protection of the actual malice test. Balancing one individual's limited First Amendment interest against another's reputation interest (*Herbert v. Lando* (1979) 441 U.S. 153, 169), we conclude that a person in the business world advertising his wares does not necessarily become part of an existing public controversy. It follows those assuming the role of business

---

[1] As of October 2020, Reddit ranks as the 17th-most-visited website in the world and 7th most-visited website in the US, according to Alexa Internet, with 40.9% of its user base coming from the United States, followed by the United Kingdom at 10.0% and Canada at 5.2%

practice critic do not acquire the First Amendment privilege to denigrate such entrepreneur." (*Vegod Corp. v. American Broadcasting Companies, Inc.* (1979) 25 Cal.App.3rd 763, 770-771.)) Not every web site post involves a public issue for the purposes of C.C.P. § 425.16(e). (See, *e.g., Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1366 (Cal. Ct. App. 2010)). As such, Defendant's spiteful comments are a private matter between Ms. Zarpas and Ms. Ouriel, not a public issue for the purposes of C.C.P. § 425.16(e).

Finally, Defendant attempts to downplay the impact of "*Internet postings such as the Reddit post* [that] can only be reasonably construed as opinions based upon the informal nature of the publication." (The Motion, Page 12, Lns. 14-20) (Emphasis added) (Citing, *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 699 (2012) (messages obviously "intended to be free-flowing diatribes" without "proper spelling or grammar, and which strongly suggest that" "unsophisticated, florid opinions" and "context further undermines" any "expectation that the posts are to be understood as assertions of fact.")).

The *Summit* case was decided in 2012 at the relative infancy of the present, massively influential, online platforms, such as Reddit. In more recent cases, the courts have become more cognizant of "the dynamic nature of this area of law." *Yelp Inc. v. Superior Court of Orange Cnty.*, 17 Cal.App.5th 1, 5 (Cal. Ct. App. 2017). In point of fact, online posts on the Reddit platform were responsible for outplaying some of the most sophisticated Wall Street Investors. (See, *e.g.,* the January 27, 2021 New York Times Article, "*GameStop Stocks Soars as Reddit Investors Take On Wall Street.*" (Ahmadshahi Decl. ¶ 23; Exhibit-9). Other online platforms have been used to govern! Former President Trump's online Tweets on the Twitter platform were deemed the U.S. Government's official statements. (See, *e.g.,* the October 14, 2020 Washington Post Article, "*Trump's Twitter Presidency: The 9 Tweets (and one retweet) that made an impact.*" (Ahmadshahi Decl. ¶ 25;

Exhibit-10.) It is, therefore, disingenuous and misleading on the part of Defendant to try and convince this Court that her "*Internet postings . . . can only be reasonably construed as opinions based upon the informal nature of the publication.*" (The Motion, Page 12, Lns. 14-20) (Emphasis added.)

For the reasons articulated below, the Motion should be denied because (1) Defendant cannot show that the Complaint ("Complaint") arises from protected activity, such as an act in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue, and, if necessary, (2) Plaintiffs can show reasonable probability of success on the merits.

## II.    STATEMENT OF FACTS

Plaintiffs filed this suit on February 2, 2021 against Defendant alleging two causes of action for libel and trade libel and four causes of action for intentional interference with contractual relations, intentional interference with prospective economic advantage, negligent interference with contractual relations, and negligent interference with prospective economic advantage. (Complaint.)

Oumere is a reputable American cosmetics company, established in Southern California. Oumere manufactures, markets, and distributes its state-of-the-art skin care products to distributors, retailers, and consumers in the United States and abroad. Oumere was launched a mere 3 years ago and has since become a uniquely successful company. Oumere has spent considerable resources to ensure its products, services, and reputation remain high-end. To meet this challenge, Oumere invests capital, time, and effort to design, test, and evaluate all manufactured products. (*Id*. at ¶1.)

Wendy Ouriel is the founder and CEO of Oumere. Oumere's success is largely due to Ms. Ouriel and her biological research background and experience. Ms. Ouriel attended the California State University at Fullerton ("Cal State Fullerton") and received her Bachelor of Science ("B.S.") and Master of Science

("M.S.") in the field of biology. Cal State Fullerton is a reputable and accredited university located in Fullerton, California. Ms. Ouriel received her B.S. in 2012 and her M.S. in 2016 and is an author in published peer-reviewed literature in a biological science journal. Ms. Ouriel has spent, and continues to spend, considerable time and effort to provide essential skin care advice to her clients through her blogs on Oumere's website at: https://www.oumere.com/blogs/news. (Ouriel Decl. ¶¶ 3-12).

Ms. Ouriel's research was the first of its kind, and it opened up a world wealth of knowledge for future researchers who sought to understand the reproductive mechanisms for all arachnids. Her research can now be used to understand tick reproductive biology which helps researchers understand how to combat illnesses caused by arachnids, such as Lyme disease. (*Id*. at ¶ 6.)

She is a published author in the Journal of Invertebrate Biology. When she completed her Master's degree, she was determined to take a new and meaningful path which was focused on skin care and the biological way to make effective, safe and natural skin care. She chose this specific path because while she was earning her Master's degree, she got acne for the first time in her life which brought a lot of hardship for her. She had never been concerned about her skin before and with the acne all she could focus on was her skin. Her confidence was gone and she could not properly focus on her work. After trying all skin care, going to doctors and trying every procedure available, she decided to use her extensive background in science to figure out what was wrong with her skin. (*Id*. at ¶¶ 7-8.)

Following extensive scientific research and investigation, she determined it was the skin care regimen she was using that was making her skin sick – *e.g.* the vitamin C serums, the essential oils and fragrance, the alkalinity of the products and the improper preservation used. She determined that the antibiotics doctors prescribed disrupted the bacterial biome of her skin and left her body defenseless

against foreign pathogens. She also determined that skin care procedures such as skin peels and lasers broke her skin down at the cellular level. (*Id*. at ¶ 9.)

With this new found discovery of what was wrong with skin care she was determined to create safe skin care products that worked! And so was born her company, Oumere. She began creating the Oumere products and she has since been devoted to educating the public on the dangers of bad skin care products, bad skin care science, and bad skin care treatments. (*Id*. at ¶ 10.)

Her skin care has helped thousands achieve skin that they are proud of and that give women and men a newfound confidence in themselves. She has had many clients tell her as much directly. (*Id*. at ¶ 11.)

Additionally, her blog reaches thousands of readers every month and has helped people become educated, informed and thinking individuals. She has received numerous e-mails from readers thanking her for her work in the science of skin care and for helping them avoid dangerous skin care products. These e-mails often discuss how their skin has improved because they were once following dangerous advice from bloggers and others posing as scientists. (*Id*. at ¶ 12.)

Defendant Zarpas is a social-media-savvy individual who provides social media management, content marketing, and SEO blogging and copywriting services to businesses. Ms. Zarpas contacted Ms. Ouriel to solicit business from Oumere to no avail. Ms. Zarpas then decided to retaliate because she did not get an apology from Ms. Ouriel. She went on a rant and published reputation damaging, false, defamatory, fraudulent, misleading and otherwise unlawful statements about Ms. Ouriel and her company Oumere on Reddit. (Complaint at ¶ 3.)

On July 25, 2020, Defendant emailed Ms. Ouriel which read as follows:
"Hi Wendy,
My name is Calli and I have been a fan of your blog for almost a year now and have read all of your articles at least once. There are even blog posts I refer back to often

like your 50 red flag ingredient list and your post about your favorite oils. (I'm finally trying your skincare regimen for the first time right now and I'm loving it so far.)

I currently work as a professional social media manager and copywriter/blogger and I think the information you are trying to share should be reaching a much larger audience. I know you already have a group of committed fans, but I believe that Oumere could be reaching even more potential customers.

I usually don't reach out to businesses offering my services because my marketing manager finds jobs for me, but I am so passionate about what you're trying to do in the skincare industry that I know we would make a great team. I offer social media management, content marketing, and SEO blogging and copywriting.

I currently blog for Rosetta Stone and do some copywriting for a few small businesses. I am also managing the Instagram and Facebook page for a yoga studio. I have space in my calendar for one more client and when I was looking through your Instagram page the other day I noticed a few changes we could make to really get your engagement up.

You truly have a ground-breaking product and offer such value to your customers through your blog. I really would love to help you share that value with others who don't know what they're missing. I've been burned by the skincare industry before and I want to help you change it with my services.

Let me know if you're interested in taking Oumere to the next level with some awesome social media marketing and SEO-optimization for your blog."

Warmly,

Calli Zarpas

Social Media Manager & Writer." (Ouriel Decl. ¶ 13; Exhibit-2.)

When Oumere refused her services, Defendant decided to retaliate and posted the following false and defamatory statements ("Review") on Reddit[2] at: https://www.reddit.com/r/SkincareAddiction/comments/j3lrsn/review_oumere_scam_an_honest_review_of_a_skincare/

The Review read as follows:

"Posted by

u/wellnesspolice[3]

2 months ago

**[Review] Oumere = Scam: An Honest Review of a Skincare Brand that's Hiding Something**

I've been stalking this Reddit page without a Reddit account for about 6 months now and finally after being scammed by a skincare company I felt like I had to come on here and give back to the community who has given me so much by sharing that the skincare company Oumere is a scam. I always do a ton of research before buying any product and I was obsessed with the founder, Wendy, and her blog. Her blog posts always seemed research-backed and as a skincare biologist, I felt she was providing a lot of good info you couldn't find elsewhere with skin care chemists. The Oumere products are really expensive and so it took me 5 months before I decided to try her travel kit, but when I did I totally regretted it. Not only did the products make me get pimples in places I never used to get them, like my cheeks, it also broke me out in small skin-colored bumps and it made pimples take longer to heal. I know that sounds crazy, but pimples that usually went away in 3-5 days stayed for a week or longer.

---

[2] Defendant has since deleted the Review but did not publish a retraction even after the undersigned counsel sent her a demand letter, see below.

[3] Defendant's User ID on Reddit is "wellnesspolice."

I followed the skincare routine's exact protocol and when I reached out with my issues, she simply said to stop using the products with no apology. Every review on the website was either a 5-star or 4-star review (which should've been a red flag) so I wanted to write a review from someone who the products didn't work for. I tried to write a 1-star review and it immediately disappeared from the website when I refreshed the page. I ended up writing a five-star review with my 1-star words, which stayed on the page for about 10 minutes before getting deleted. It just makes me wonder how many other bad reviews she is hiding by immediately deleting them from her site.

I know I was probably stupid to fall for Oumere's tricks, but I really want this post to help anyone considering buying Oumere products because the company and Wendy are definitely hiding something. Is there anybody else who has had trouble with the Oumere products?" (the "Review") (Ouriel Decl. ¶ 14; Exhibit-1.)

In the Review, Ms. Zarpas falsely claims that Ms. Ouriel does not have scientific credentials, that Oumere's products are not based on scientific research, that Oumere's products caused her pimples, that Oumere's products will damage the skin of existing and potential clients, and that Ms. Ouriel hide negative product information from her existing and potential clients by deleting negative reviews from the Oumere's website. (Ouriel Decl. ¶ 15.)

Ms. Zarpas' statements were made to destroy Ms. Ouriel's reputation as a scientist and harm her business which she has worked so hard to create, all because she refused her solicitation and did not apologize to her. (Ouriel Decl. ¶ 16.)

Ms. Zarpas appears to suffer from a chronic skin condition, commonly referred to as acne. This is evident in her Review where she states: "Not only did the products make me get *pimples in places I never used to get them*, like my cheeks, it also broke me out in small skin-colored bumps and *it made pimples take longer to heal.* (the "Review") (Ouriel Decl. ¶ 14; Exhibit-1.) (Emphasis added.) She has

also shared her acne condition with other Reddit users on Reddit. In one of her posts, she states how celery juice may have contributed to her acnes appearing in never-before-seen places on her body, following a purging process. (Ahmadshahi Decl. ¶ 27; Exhibit-3)

Skin care companies rely heavily on their reputation in the industry and on the loyalty of their clientele. When people saw Ms. Zarpas' review, they made the decision to not purchase products from Oumere. Ms. Ouriel has received messages from people stating that Ms. Zarpas' review resulted in them not purchasing Oumere products. She has suffered severe financial loss due to Ms. Zarpas' defamatory attacks. On at least two occasions, Plaintiffs' clients had read the Review on Reddit and terminated their relations with Plaintiffs after reading Defendant's Review. (Ouriel Dec. ¶ 17; Exhibit-4)

As a scientist Ms. Ouriel studies what she observes and she has created Oumere around her scientific research, investigation, and observations. She is immensely proud of her work and she is completely devoted to helping people achieve their skin care goals. She did not deserve to be the subject of Ms. Zarpas' online harassment simply because she refused her solicitation and did not apologize to her. (Ouriel Decl. ¶ 18.)

She has undoubtedly lost current and prospective clients as a result of Ms. Zarpas' defamatory statements. The average Oumere customer spends hundreds of dollars per purchase, and makes multiple purchases per year. Each Oumere loyalist represents a lifetime of income for the Oumere brand. In turn, every current client and potential client that Ms. Zarpas has driven away represents a loss of a lifetime of sales. Plaintiffs have lost in excess of $1,000,000 (likely multiples of that amount) in sales as a result of Ms. Zarpas' defamatory statements. (Ouriel Decl. ¶¶ 19-20.)

On or about December 10, 2020, Plaintiffs became aware of the Review. On December 17, 2020, Oumere, served a letter on Defendant demanding her to (1) cease and desist making any false statements, (2) making a public retraction, (3) full accounting of the publications, and (4) removal of the offending materials. (Ahmadshahi Decl. ¶ 15; Exhibit-5.) On December 24, 2020, Defendant doubled down and attempted to absolve herself from liability by offering to revise the Review. (Ahmadshahi Decl. ¶ 17; Exhibit-6). On December 28, 2020, Oumere refused and reiterated its demands. (Ahmadshahi Decl. ¶ 19; Exhibit-7). On January 5, 2021, Defendant, through her counsel, informed Oumere that she has removed the Review on Reddit but refused to retract. From January 19, 2021 through January 21, 2021, the parties attempted to settle the dispute without court action to no avail, prompting filing of this Complaint. Plaintiffs never asked for money, as evident in the above letters, Exhibits-5, 6, and 7. Defendant misleads this Court by stating otherwise. In fact, during counsel L.R. 7-3 meet and confer before filing the Motion, it was Defendant who threatened Plaintiffs[4] with $160,000 attorney fees (Ahmadshahi Decl. ¶ 21 Exhibit-8), which has since the filing of the Motion, arisen to an unconscionable amount of $217,500, in an extortionist effort to silence Plaintiffs and dissuade them from filing their Opposition.

---

[4] Should this Court deny Defendant's Motion, Plaintiffs reserve their right to file a separate motion for their attorney fees and costs. "While a party filing a special motion to strike under section 425.16 often seeks an award of attorney fees and costs in the same moving papers, a request for attorney fees under section 425.16, subdivision (c), may also be made by the successful party — either the moving party or, as here, the party opposing the motion — by a separate, subsequently filed noticed motion." *Doe v. Luster*, 145 Cal.App.4th 139, 144 (Cal. Ct. App. 2006).

## III.   LEGAL STANDARDS

"Code of Civil Procedure section 425.16 sets forth the procedure governing anti-SLAPP motions. Courts employ a two-step process to evaluate anti-SLAPP motions. *(Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) To invoke the protections of the statute, the defendant must first show that the challenged lawsuit arises from protected activity, such as an act in furtherance of the right of petition or free speech. *(Ibid.)* From this fact, courts " 'presume the purpose of the action was to chill the defendant's exercise of First Amendment rights. It is then up to the plaintiff to rebut the presumption by showing a reasonable probability of success on the merits.' " *(Ibid.)* In determining whether the plaintiff has carried this burden, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc.§ 425.16(b)(2); see *Soukup v. Law Offices of Herbert Hafif (2006)* 39 Cal.4th 260, 291.

## IV.   ARGUMENT

### A.   Defendant's Statements Were Not Made In Connection With An Issue Of Public Interest

To meet her burden for the first prong of the anti-SLAPP analysis, Defendant must demonstrate that Plaintiffs' claims arise from protected activity. That is, it must be that "defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . 'the act underlying the plaintiff's cause' or 'the at which forms the basis for the plaintiff's cause of action' must itself have been an act in furtherance of the right of petition or free speech.' " *(Equilon Enterprises,* 29 Cal.4th 53, 63 (internal citations omitted).)

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to

the public or a public forum in connection with an issue of public interest." (Code Civ. Proc.§ 425.16(e).) "A defendant meets his or her burden on the first step of the anti-SLAPP analysis by demonstrating the acts underlying the plaintiff's cause of action fall within one of the four categories spelled out in section 425.16, subdivision (e)." *Collier v. Harris*, 192 Cal. Rptr. 3d 31, 38 (Cal. Ct. App. 2015)

"As noted, the anti-SLAPP statute is designed to protect, among other acts, 'any written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest.*'" *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1366 (Citing § 425.16, subd. (e)(3)) (Emphasis added). Plaintiffs acknowledge that Reddit constitutes a public forum but contend that " 'not every Web site post involves a public issue.'" (*Ibid.*) (Quoting, *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226.

Although Defendant's Review falsely claims that Ms. Ouriel does not have scientific credentials, that Oumere's products are not based on scientific research, that Oumere's products caused her pimples, that Oumere's products will damage the skin of existing and potential clients, and that Ms. Ouriel hide negative product information from her existing and potential clients by deleting negative reviews from the Oumere's website (Ouriel Decl. ¶ 15.), Plaintiffs argue that the statements made in the Review are about a private dispute between Ms. Zarpas and Ms. Ouriel. "[N]ot all speech in a movie is of public significance and therefore entitled to protection under the anti-SLAPP statute. The issue turns on the specific nature of the speech rather than generalities abstracted from it." *Dyer v. Childress*, 147 Cal.App.4th 1273, 1280 (Cal. Ct. App. 2007).

Specifically, the Review starts with Ms. Zarpas stating that: "I was *obsessed with the founder*, Wendy [Ouriel], and her blog." She continues with: "I followed the skincare routine's exact protocol and when I reached out with my issues, she [Ms. Ouriel] simply said to stop using the products *with no apology*." She concludes

by stating: "It just makes me wonder *how many other bad reviews she is hiding by immediately deleting them from her site*." These statements tend to show that the Review is about *Ms. Zarpas' obsession with Ms. Ouriel and her blog, Ms. Zarpas' disappointment with not getting an apology from Ms. Ouriel, and Ms. Zarpas' interest in Ms. Ouriel's online activity*. These topics are not a matter of public interest.

For instance, in *Wong*, "the posted review involved a public issue, namely public concern, discussion, and controversy about the use of silver amalgam because it contains mercury. . . the posting went beyond parochial issues concerning a private dispute about particular dental appointments. It implicitly dealt with the more general issues of the use of nitrous oxide and silver amalgam, implied that those substances should not be used in treating children, and informed readers that other dentists do not use them." *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1367.

Here, Defendant's posted Review did not inform the public of a specific product or any substance used in that product that cause pimples. In fact, it is now abundantly clear that Defendant suffers from her own chronic skin condition and Oumere's products did not cause her acnes. Defendant's personal vendetta against Ms. Ouriel is not an issue of public interest. See, *Dyer v. Childress* 147 Cal.App.4th 1273, 1280  (false portrayal of real person in a movie not an issue of public interest); *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (published allegation of theft by one token collector against another not an issue of public interest); and *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (information published in union newspaper about termination of person who supervised eight people not an issue of public interest).

Therefore, Defendant has failed to show that the challenged lawsuit arises from protected activity. However, should this Court find Plaintiffs' analysis

unpersuasive, Plaintiffs can show a reasonable probability of success on the merits of the challenged lawsuit. *Equilon Enterprises v. Consumer Cause, Inc.* 29 Cal.4th 53, 61.

### B.      Plaintiffs Can Show a Reasonable Probability of Success

### 1.      Defamation and Trade Libel Causes of Action

Plaintiffs' first two causes of actions are for defamation and trade libel. As to defamation cause of action, Defendant's challenge is that the statements are subject to qualified privilege under Code of Civil Procedure Section 47(c), are substantially true, and are mere expression of opinion. As to trade libel, Defendant's additional challenge is that Plaintiffs cannot prove special damages. Therefore, Defendant concedes that the remaining elements of these causes of action, as alleged in the Complaint, satisfy the second prong of the anti-SLAPP analysis.

### i.      Defendant Acted With Malice

Initially, Defendant's assertion that the common interest privilege applies to her defamatory statements is unavailing. To support her position, Defendant cites *Kashian v. Harriman*, 98 Cal.App.4th 892, 928 (Cal. Ct. App. 2002). However, the facts of the *Kashian* case are substantially different and distinguishable from the present case. There, the interested parties were defendant attorney's own clients, to wit, Saint Agnes Medical Center (St. Agnes) and the Local Health Care Coalition (LHCC). The court held that St. Agnes and LHCC had a common interest in the Attorney General's investigation of the corrupt Plaintiff/businessman/politician's alleged conflict of interest." *Kashian,* 98 Cal.App.4th 892, 930. Here, Defendant posted a defamatory statement on Reddit to millions of Reddit followers, the statements were not made to the Attorney General, and the statements do not involve an investigation of Plaintiffs' corrupt practices. Taking Defendant's absurd argument to its limit, all Internet reviewers, posting their defamatory statements on

the Internet, are entitled to qualified privilege under Section 47 (c). Defendant has not come forward with any authority to support such a proposition.

Notwithstanding, Defendant acted with malice to destroy Plaintiffs' reputation and to injure them which defeats qualified privilege. (*Id*.) Although, Plaintiffs empathize with her condition, Ms. Zarpas seems to suffer from chronic acne, as her admission in the Review, discussed above, and her following post about her skin condition on Reddit make clear:

"***Pimples and Canker Sores After Starting Celery Juice***

hi! I started drinking celery juice daily about 10 days ago. I haven't noticed a huge difference yet, but over the past few days, I've also started incorporating zinc, holy basil, nettle, b-complex, and trying to avoid dairy. Today I got a huge canker sore inside my mouth right against my lip and then I got a weird pimple looking thing on my arm (which is very out of the ordinary) along with some acne on my chin (which is slightly more normal). Is this some normal purging-like behavior or am I doing something wrong? I tried searching 'canker sores' but I didn't see anything! Thanks!" (Ahmadshahi Decl. ¶ 27; Exhibit-3.)

On July 25, 2020, Defendant emailed Plaintiffs in a failed attempt to solicit their business to no avail. (Ouriel Decl. ¶ 13; Exhibit-2.) Defendant was also enraged because she did not get an apology from Ms. Ouriel. "I followed the skincare routine's exact protocol and when I reached out with my issues, she simply said to stop using the products with no apology." (The "Review") (Ouriel Decl. ¶ 14; Exhibit-1.)

Knowing full well that her skin condition had nothing to do with Plaintiffs' product, she, nevertheless, decided to post her Review, asserting that Plaintiffs' product caused her pimples, Ms. Ouriel is a fraud, does not have the expertise she claims and hides negative product information from the public, that Oumere's is a scam because its products are not based on scientific research and they cause

pimples. These facts tend to demonstrate that Defendant acted with malice. "[I]t is only upon some showing regarded by the law as adequate to establish the presence of malice in fact, that is the motive and willingness to vex, harass, annoy, or injure." *Davis v. Hearst*, 160 Cal. 143, 162 (Cal. 1911).

### ii. The Statements Are False

Defendant has not come forward with any facts proving the truth of the statements. Defendant has falsely claimed that Ms. Ouriel does not have scientific credentials, that Oumere's products are not based on scientific research, that Oumere's products caused Defendant's pimples, that Oumere's products will damage the skin of existing and potential clients, and that Ms. Ouriel hides negative product information from her existing and potential clients by deleting negative reviews from the company's website. Ms. Ouriel has declared to the contrary. (Ouriel Decl. ¶ 15.) "The burden of pleading and proving truth is generally on the defendant." *Smith v. Maldonado*, 72 Cal.App.4th 637, 647 n.5 (Cal. Ct. App. 1999).

### iii. The Statements Are Not Mere Expressions of Opinion

"[T]o support a defamation claim, the alleged statement must be one that is reasonably interpreted as stating *actual facts* that are *provably false*." *Yelp Inc. v. Superior Court of Orange Cnty.*, 17 Cal.App.5th 1, 16. (Emphasis original). "While it is true that pure expressions of opinion are not actionable, '[t]hat does not mean that statements of opinion enjoy blanket protection. To the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation.'" *Ibid.* (Quoting, *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 156) (Internal citations omitted.)

Being disappointed and frustrated by Ms. Ouriel's rejection of her solicitation and refusal to apologize, Defendant went on a rant to retaliate and damage Plaintiffs' reputation by posting the Review on Reddit. Contrary to Defendant's interpretation of the Review as purely expressions of opinions, they clearly imply

false assertions of facts. Plaintiffs do not challenge terms such as "scam," "tricks," "brand that is hiding something," or "expensive" as being purely expressions of opinion, but considering the "totality of circumstances," the Review falsely implies that Ms. Ouriel does not have scientific credentials, that Oumere's products are not based on scientific research, that they cause pimples and will damage the skin of existing and potential clients, and that Ms. Ouriel hides negative product information from existing and potential clients by deleting negative reviews from the company's website. "[W]hen ascertaining whether the statements in question are provably false factual assertions, courts consider the *totality of the circumstances*." *Yelp Inc. v. Superior Court of Orange Cnty.*, 17 Cal.App.5th 1, 16 (emphasis added) (internal citations omitted).

In *Wong*, a Yelp reviewer began a review of a dentist by stating: "Let me first say I wish there is [ *sic*] '0' star in Yelp rating. Avoid her like a disease!" *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1361. The appellate court expressly relied upon those introductory statements as part of the circumstances that would support a fact finder's determination the review had falsely implied the plaintiff engaged in specific acts of professional wrongdoing even though the review did not explicitly state she had done those things. *Id.* at pp. 1371-1372.

Here, Defendant's colorful title of her Review is: "*Oumere = Scam: An Honest Review of a Skincare Brand that's Hiding Something.*" (Emphasis added.) With this title, she goes on to say: "I've been stalking this Reddit page without a Reddit account for about 6 months now and finally after being scammed by a skincare company I felt like I had to come on here and give back to the community who has given me so much by sharing that the skincare company Oumere is a scam. I always do a ton of research before buying any product and I was obsessed with the founder, Wendy, and her blog. *Her blog posts always seemed research-backed and as a skincare biologist, I felt she was providing a lot of good info you couldn't*

*find elsewhere with skin care chemists*." (Emphasis added.) Taking the totality of the circumstances, these statements falsely assert that Ms. Ouriel does not have scientific credentials and that Oumere's products are not based on scientific research.

In *Erlich v. Etner*, 224 Cal.App.2d 69, 73 (Cal. Ct. App. 1964), defendant rabbi falsely publicized in the Jewish community that plaintiff butcher sold non-kosher chickens to the public. The publication caused purchasers to refrain from purchasing plaintiff's chickens, solely *based on their belief in the Jewish religion*. Here, Defendant wrongly accuses Plaintiffs of selling non-scientific skincare products to purchasers whose decision to purchase is solely *based on their belief in science*. Indeed, one customer emailed Oumere to say: "I was just about to order your products because I found your company from the blog and I thought this was a scientific company. Now I know I was scammed because after doing a quick google search of your company I found this article: https://www.reddit.com/r/SkincareAddiction/comments/j3lrsn/review_oumere_scam_an_honest_review_of_a_skincare/. I am glad that I found this factual reporting of your company...I thought after reading the blog your founder was an actual scientist but this post is pretty telling of how she lies about her science to MISLEAD AND SCAM CUSTOMERS. Does she even have a degree or did she lie about that too? I wont be buying from you ever." (Ouriel Dec. ¶ 17; Exhibit-4).

The Review continues with: "The Oumere products are really expensive and so it took me 5 months before I decided to try her travel kit, but when I did I totally regretted it. *Not only did the products make me get pimples in places I never used to get them, like my cheeks, it also broke me out in small skin-colored bumps and it made pimples take longer to heal. I know that sounds crazy, but pimples that usually went away in 3-5 days stayed for a week or longer.*" (Emphasis added.) Even without taking the totality of circumstances, these statements falsely assert that

Oumere's products cause pimples and will damage the skin of existing and potential clients, if used.

In *Yelp*, a certified public accountant ("CPA") brought an action against his client who went on a rant on the Yelp review page after she had to pay $400 instead of previously quoted $200 for the CPA's services stating that Plaintiff's work product was sloppy and that she had another firm redo her tax return, which she had not. *Yelp* 17 Cal.App.5th 1, 17-18. Yelp, along with Dropbox, Inc., Facebook, Inc., Google Inc., Pinterest, Inc., Reddit, Inc., Snap, Inc., and Twitter, Inc., as Amici Curiae, contended that the statements were mere expressions of opinion. The Court, disagreed. It concluded that "a reasonable fact finder could find that [Defendant] is implying [Plaintiff] had no justification for his price hike–hence the rage." (*Ibid*.) Here, Defendant falsely states that Oumere's products are "*expensive*" and they caused her "*pimples in places [she] never used to get them before.*" (Emphasis added.)

The Review concludes with: "I followed the skincare routine's exact protocol and when I reached out with my issues, she simply said to stop using the products with no apology. Every review on the website was either a 5-star or 4-star review (which should've been a red flag) so I wanted to write a review from someone who the products didn't work for. I tried to write a 1-star review and it immediately disappeared from the website when I refreshed the page. I ended up writing a five-star review with my 1-star words, which stayed on the page for about 10 minutes before getting deleted. It just makes me wonder how many other bad reviews she is hiding by immediately deleting them from her site. *I know I was probably stupid to fall for Oumere's tricks, but I really want this post to help anyone considering buying Oumere products because the company and Wendy are definitely hiding something.* Is there anybody else who has had trouble with the Oumere products?" (Emphasis added.) Taking the totality of the circumstances, these statements falsely

assert that Ms. Ouriel hides negative product information from her existing and potential clients by deleting negative reviews from the company's website.

In *Yelp*, Defendant also warned future clients to expect to be treated as she was by Plaintiff. Yelp contended that "predictions cannot be proven true or false." The Court disagreed. "In our view, a trier of fact could reasonably include [Defendant]'s 'prediction' of what future clients might expect is also an implied representation as to the manner in which [Plaintiff] (and perhaps his staff) actually treated [Defendant]." (*Ibid*.) Here, Defendant falsely warns "*the community*" and "*anyone considering buying Oumere products*" to expect receiving expensive products that will cause pimples. (Emphasis added.)

These statements are patently false and they constitute libel per se. " 'A statement can ... be libelous per se if it contains a charge by implication from the language employed by the speaker and a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter.'" (*Ibid*., quoting *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112. (internal citations omitted.)

### iv.    Plaintiffs Can Show Special Damages

"It is settled law that, in some instances at least, disparagement of the goods of a businessman may be made in such a manner as to imply business dishonesty, giving rise to an action under sections 45 and 45a of the Civil Code in which, it being 'libel per se,' no special damages need be alleged or proven. *Erlich v. Etner*, 224 Cal.App.2d 69, 73. Defendant's statements constituted libel per se in that the statements, directly or by implication, convey the false assertion that Oumere is a deceitful company and its owner and operator, Ouriel, is dishonest. Further, the statements, directly or by implication, convey the false assertions and that its owner and operator, Ouriel, does not have the expertise in skin care and skin care products. Further, the statements, directly or by implication, convey the false assertions that

Oumere's products cause pimples. Furthermore, the statements, directly or by implication, convey the false assertions that Oumere deletes negative reviews on its website. Such statements damaged Plaintiffs as a natural consequence of the words, and amount to libel per se. As such, Plaintiffs need not prove special damages.

Notwithstanding, the Complaint alleges that on at least two occasions, Plaintiffs' clients terminated their relations with Plaintiffs after reading Defendant's Review. (Complaint, ¶ 17.) "[T]he plaintiff must prove in all cases that the publication has played a material and substantial part inducing others not to deal with him, and that as a result he has suffered special damages. . . . Usually, . . . the damages claimed have consisted of loss of prospective contracts with the plaintiff's customers." *Atlantic Mutual Insurance v. J. Lamb*, 100 Cal.App.4th 1017, 1035 (Cal. Ct. App. 2002) (internal citations omitted).

Plaintiffs have come forward with evidence that an existing client and a potential client read Defendant's Review and did not purchase Oumere's products. (Ouriel Dec. ¶ 17; Exhibit-4). Moreover, Ms. Ouriel has declared "I have undoubtedly lost current and prospective clients as a result of Ms. Zarpas' defamatory statements. The average Oumere customer spends hundreds of dollars per purchase, and makes multiple purchases per year. Each Oumere loyalist represents a lifetime of income for the Oumere brand. In turn, every current client and potential client that Ms. Zarpas has driven away represents a loss of a lifetime of sales. I have lost in excess of $1,000,000 (likely multiples of that amount) in sales as a result of Ms. Zarpas' defamatory statements." (Ouriel Dec. ¶¶ 19-20). " 'A general allegation . . . of people being dissuaded *by reason of a publication* from making any contract with or coming to the hotel, or giving it their patronage, is sufficient.'" *Erlich v. Etner*, 224 Cal.App.2d 69, 74 (quoting *Wright v. Coules*, 4 Cal.App. 343, 347 (Cal. Ct. App. 1906) (emphasis original.)

### 2.      Interference With Economic Relations Causes of Action

Plaintiffs acknowledge that their cause of action for negligent interference with contractual relations is not recognized by California courts and will amend the Complaint accordingly following the ruling on the Motion. (See, *e.g., Fifield Manor v. Finston*, 54 Cal.2d 632 (Cal. 1960). As such, the following analysis will focus on the remaining five causes of action. Defendant's only challenge to these causes of actions is (i) evidence of contractual or economic relations, and (ii) her knowledge and intent to disrupt them. Therefore, Defendant concedes that the remaining elements of the these causes of action, as alleged in the Complaint, satisfy the second prong of the anti-SLAPP analysis.

### i.      An Existing Client and a Potential Client Read the Review and Terminated Their Economic Relations With Plaintiffs

As demonstrated in Section (B)(1)(iv) above, Plaintiffs have put forward evidence that an existing client and a potential client read the Review and decided not to purchase or use Plaintiffs' products. On December 7, 2020, an existing client emailed Oumere stating that she had read the Review and became "really uncertain" about Oumere's products and Oumere's claim regarding their science-based efficacy. On December 27, 2020, a potential client emailed Plaintiffs stating "I was just about to order your products because I found your company from the blog and I thought this was a scientific company. Now I know I was scammed because after doing a quick google search of your company I found this article: https://www.reddit.com/r/SkincareAddiction/comments/j3lrsn/review_oumere_scam_an_honest_review_of_a_skincare/," which is the link to the Review. (Ouriel Dec. ¶ 17; Exhibit-4).

"[T]he tort of malicious interference with contractual relations by inducing a breach of contract is a remedy created by the common law to compensate one whose contractual relations with others are interfered with *by a third person*" *Dryden v.*

*Tri-Valley Growers*, 65 Cal.App.3d 990, 998 (Cal. Ct. App. 1977) (emphasis original). Plaintiffs have produced prima facie evidence that there was at least one existing contract with one existing client who became "really uncertain" to continue purchasing Oumere's products as a result of Defendant's Review.

In so far as the tort of interference with prospective economic advantage requires an independently wrongful act, "an act is independently wrongful if it is unlawful, that is if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Company v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159 (Cal. 2003). Defendant's conduct was independently unlawful. Plaintiffs have demonstrated that Defendant's Review was an unlawful act in that it defamed Plaintiffs, as described herein, causing the existing client and the potential client to refrain from purchasing Plaintiffs' products. Plaintiffs have not had the opportunity to investigate how many other existing and prospective clients have severed their economic relationships with Plaintiffs. "We are inclined to allow the plaintiff in a SLAPP motion a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard and the limited opportunity to conduct discovery.'" *Integrated v. Fitzgibbons*, 140 Cal.App.4th 515, 530 (Cal. Ct. App. 2006) (citing, *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823, disapproved on other grounds by *Equilon Enterprises v. Consumer Cause, Inc.* 29 Cal.4th 53, 68, fn. 5) (internal citations omitted).

### ii.    Defendant Knew About Plaintiffs' Economic Relations With Their Existing and Potential Clients and Intentionally and/or Negligently Disrupted Them

Defendant's "knowledge . . . of the existence of the relationship" between Plaintiffs and other clients, distributors, and/or retailers is inferred because she was a client herself. *Blank v. Kirwan*, 39 Cal.3d 311, 330 (Cal. 1985). In her email, she

states: "My name is Calli and I have been a fan of your blog for almost a year now and have read all of your articles at least once. There are even blog posts I refer back to often like your 50 red flag ingredient list and your post about your favorite oils. (I'm finally trying your skincare regimen for the first time right now and I'm loving it so far.)" (Ouriel Decl. ¶ 13; Exhibit-2.) Therefore, Defendant knew there are other clients, distributors, and/or retailers who have similar economic relations with Plaintiffs.

"[T]o satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Company v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153. In her Review, Ms. Zarpas clearly demonstrates her intention to interfere with Plaintiffs' economic relations. She goes on to say: "being scammed by a skincare company I felt like I had to come on here and give back to the community who has given me so much by sharing that the skincare company Oumere is a scam . . . I know I was probably stupid to fall for Oumere's tricks, but I really want this post to help anyone considering buying Oumere products because the company and Wendy are definitely hiding something." (The "Review") (Ouriel Decl. ¶ 14; Exhibit-1.) Defendant knew or should have known that her defamatory statements in her Review would and did interfere with Plaintiffs economic relations. As shown above, an existing client and a potential client severed their relations with Plaintiffs as a result of reading Defendant's Review. (Ouriel Dec. ¶ 17; Exhibit-4.)

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.

Respectfully submitted,

Dated: March 22, 2021,       AHMADSHAHI LAW OFFICES

By:    /s/Michael M. Ahmadshahi
       Michael M. Ahmadshahi, PhD, Esq.
       Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I, Michael M. Ahmadshahi, certify under penalty of perjury that the foregoing was served on the interested parties listed below, via the Court's Electronic Filing Program, United States Mail, Electronic Mail, and/or any other manner permitted by the Federal Rules of Civil Procedure on March 22, 2021.

Dated March 22, 2021,

By:   /s/ Michael M. Ahmadshahi
      Michael M. Ahmadshahi, PhD, Esq.
      AHMADSHAHI LAW OFFICES
      17901 Von Karman Avenue, Suite 600
      Irvine, CA 92614
      Telephone: 949.556.8800
      Facsimile:  949.556.8701
      Email:  mahmadshahi@mmaiplaw.com
      Attorney for Plaintiffs

**THE SYVERSON LAW FIRM**
Erik Swen Syverson, Esq. (Bar No. 221933)
erik@syversonlaw.com
2288 Westwood Blvd., Suite 212
Los Angeles, CA 90064
Telephone: (310) 270-6000

**BROWN, NERI, SMITH & KHAN LLP**
Geoffrey A. Neri (SBN 258802)
geoff@bnsklaw.com
11601 Wilshire Blvd., Suite 2080
Los Angeles, CA 90025
Tel: (310) 593-9890
Fax: (310) 593-9980

Attorneys for Defendant Calli Zarpas